IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHELLE REULET (3),<br>TERRIE ADAMS (6), and<br>CRAIG BROOMBAUGH (10),<br><br>    Defendants. | Case No. 14-40005-DDC |

### MEMORANDUM AND ORDER

This case comes before the Court on the government's Motion to Reconsider and/or Clarify Court's Order Dated January 11, 2016 (Doc. 607).

First, the government seeks clarification whether one sentence in the Court's previous Order (Doc. 602) applies to all witnesses or just the expert witnesses. *See* Doc. 602 at 5 ("The Court holds that no witness—whether for the government or defense—may testify that a drug in question is or is not an analogue drug."). The Court clarifies that its Order ruled that no *expert* witness may testify that a drug in question is or is not an analogue drug. The sentence questioned by the government's motion was under a heading ruling on the government's limine motion objecting to expert opinions. And the sentence before the sentence at issue now summarized that the government had sought "to exclude defense expert opinions" on this topic. *Id.* In context, the Court's ruling was a limited one and the Court did not anticipate the confusion that the government now expresses. But to avoid any future confusion, the Court now explains that its *in limine* ruling addressed expert witnesses only. As a result, the government's

1

arguments that this ruling impermissibly precludes evidence about defendants' knowledge are now moot.

Next, the government asserts that the Court raised this issue *sua sponte* and claims that the ruling is clear error. The Court respectfully disagrees. The Court addressed the issue of expert testimony concluding whether something was an "analogue drug" because the government had moved the Court to exclude defendants' experts' testimony on this exact subject. *See* Doc. 535 at 11 (arguing that defense experts should not "be allowed to render opinions about whether a drug is or is not an analogue drug"). And, for the reasons explained below, the Court stands behind its decision to disallow such expert testimony.

The government also stresses that, even if applicable only to expert witnesses, the Court's ruling contradicts the prior *Daubert* rulings and should be reconsidered. The government disagrees with the Court's determination that expert testimony that a given drug is an "analogue drug" would usurp the jury's role of applying the law to the facts. And it points to the Court's previous *Daubert* ruling allowing testimony about "substantial similarity," which, in part, stated "whether a particular substance qualifies as a controlled substance analogue is a question of fact." Doc. 546 at 19. The government also analogizes this issue to the Court's determination that experts may opine whether something is "counterfeit." The Court disagrees with the government's analysis and analogy, so it explains again, this time in more detail, why such expert testimony will not be allowed.

Until its ruling on January 11, the Court had not ruled whether expert testimony concluding that a drug was or was not an analogue drug was admissible. The Court previously undertook an analysis whether an expert may opine that a drug is substantially similar or

counterfeit.  And a similar analysis led the Court to the ruling raised by the government's motion—that an expert may not opine that a drug is or is not a controlled substance analogue.

"Generally, an expert may not . . . state legal conclusions drawn by applying the law to the facts." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Okland Oil Co.*, 144 F.3d at 1328).  "[T]estimony which articulates and applies the relevant law . . . circumvents the jury's decision making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  Rule 704 authorizes testimony on ultimate facts, but disfavors testimony "that articulates and applies the relevant law." *Id.*  The line between legal conclusion testimony and factual testimony is not always a bright one, however, because expert opinions often utilize aspects of both fact and law.  *See* 29 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6284 (1997) (internal quotation marks omitted).[1]  And, when expert opinions mix fact and law, admissibility turns on "whether the opinion will assist the trier of fact to understand the evidence or determine a fact in issue. . . .  Thus the admissibility of opinion testimony that may involve legal conclusions ultimately rests upon whether that testimony helps the jury resolve the fact issues in the case." *Id.*

Here, expert testimony concluding that the substances at issue are or are not "analogue drugs" presents an opinion mixing law and fact.  The government has charged defendants with knowingly and intentionally distributing controlled substance analogues in violation of 21 U.S.C.

---

[1] This treatise cites two cases to support this proposition.  In *Estes v. Moore*, the court did not allow expert opinion testimony about whether probable cause existed, holding that "while the existence of probable cause is a mixed question of law and fact, the ultimate conclusion is a question of law. . . .  The proposed testimony was, therefore, not opinion testimony but rather it was a statement of a legal conclusion." *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993).  *Hanson v. Waller* explains that Rule 704 does not "totally dispel the confusion over the admissibility of expert opinions arguably amounting to conclusion[s] of law," and cites cases which had to draw the line between admissible opinions and legal conclusions.  888 F.2d 806, 812 (11th Cir. 1989).  *See also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one.").

§ 841.  And "controlled substance analogue" is a legal term, defined by statute.  *See* 21 U.S.C. § 802(32)(A).  The Court previously stated that "whether a substance qualifies as a controlled substance analogue is a question of fact."  *See* Doc. 546 at 19.  This is so.  To return a verdict, the jury must decide whether a substance at issue in this trial is a controlled substance analogue.  The jury will make this determination by evaluating the evidence to decide whether the substance's chemical structure is "substantially similar" to that of a controlled substance (prong 1), and:  (a) whether the substance's effect on the central nervous system is "substantially similar to or greater than" the effect of a controlled substance; or (b) if a relevant person has represented or intended for the substance to affect the central nervous system in a manner "substantially similar to or greater than" the effect of a controlled substance (prong 2).   In doing so, the jury will do what juries customarily do in criminal cases:  decide whether the facts (as the jury finds them) establish every element of the crime charged under the Analogue Act, as the Court's Instructions define that crime.  To opine that a particular substance is (or is not) a controlled substance analogue would require the expert witness to apply the legal definition to facts determined (or assumed as true) by the expert.  This outcome leads the Court to the next level of the analysis—would such testimony help the jury resolve the fact issues in the case?  *See* 29 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6284.

       The government points out that expert opinion testimony that the drugs examined are controlled substance analogues does not tell the jury how to decide the ultimate question of law—*i.e.* whether defendants knowingly and intentionally distributed controlled substance analogues.  But, it does decide the facts about substantial similarity and apply those facts to the legal definition of a controlled substance analogue.  The Court concludes that such opinions are inadmissible.

The Federal Rules of Evidence "do not . . . allow an expert to offer testimony that merely tells the jury what result they should reach." *See United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). And the Rules also do not allow "testimony phrased in terms of 'inadequately explored legal criteria.'" *Id.; see also* Fed. R. Evid. 704 advisory committee's notes (1972). Courts often exclude such testimony because it states legal conclusions or usurps the function of the jury in deciding the facts." *Simpson*, 7 F.3d at 188. The advisory committee's notes provide a useful example: The Court should exclude a question asking if a person had "capacity to make a will." Fed. R. Evid. 704 advisory committee's notes (1972). But, if the question is worded in terms of whether the person "had sufficient mental capacity to know the nature and extent of his property," the Court should allow the question. *Id.* The first question should be excluded because it "is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response," supplying the jury with the expert's view of what result the jury should reach. *Owen*, 698 F.2d at 240.

Following this guidance from the advisory committee, questions put to qualified experts that ask, "Is the substance examined substantially similar in chemical structure to a controlled substance?" seek properly admissible evidence. A qualified expert may opine about the factual criteria the statute adopts and the Court, at the end of the trial, will instruct the jury how to apply the law's definition of controlled substance analogue to the facts, as the jury finds them. But questions that ask, "Is this a controlled substance analogue?" elicit a legal based response and impermissibly tell the jury what result to reach.

"When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of

an opinion to enable the jury to make its own informed determination." *United States v. Bates*, No. 1:11-cr-00123-BLW, 2012 WL 1579590, at *1 (D. Idaho May 4, 2012). Thus, an expert can testify to the extent outlined in more detail here, but "should avoid legal conclusions, which usurp[] the jury's role." *Id.* (citing *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)); *see also United States v. Rich*, 145 F. App'x 486, 488 (5th Cir. 2005) (explaining that expert testimony stating legal conclusions about ultimate issues is inadmissible).

Here, the Court will not allow expert testimony that a drug is or is not a controlled substance analogue because such opinions are not helpful to the jury. Naturally, the experts may provide the groundwork to enable the jurors to make their own determination about this question, *e.g.*, the experts may opine about substantial similarity. But, the parties may not take the next step and ask the experts to testify to the conclusion that a substance is or is not a controlled substance analogue. To testify to such a conclusion, the experts would have to examine and weigh other experts' conclusions about similarity under each prong, make a factual determination whether substantial similarity existed, and apply the legal definition to those facts. The jury is equally capable of weighing the expert opinions, deciding if substantial similarity exists under both prongs of the controlling statute, and then concluding whether a drug is a controlled substance analogue under the statute. The Court has concluded that expert opinions of this nature would not be helpful because they would not help the jury understand the evidence or determine facts in issue (*i.e.* whether there is substantial similarity or not). Instead of helping the jury resolve the fact issues, they attempt to decide those issues for the jury.

The government contends that these expert opinions should be allowed because in "street drug" cases courts admit expert testimony "that a drug is cocaine" and "testimony that cocaine is

6

a controlled substance." Doc. 607 at 5.  But, this is not just a controlled substance case about "street drugs" with defined scientific meanings.

Analogue drug cases have an added layer of complexity that does not exist in controlled substance cases.  A controlled substance is a drug explicitly listed on a schedule in the statute. *See* 21 U.S.C. 802(6).  Cocaine, for example, explicitly is listed as a Schedule II drug. *See* 21 U.S.C. § 812.  Cocaine has a specific, scientifically determined meaning, and a qualified scientist can conduct scientific tests to determine whether a substance contains cocaine.  But no scientific test exists to reach a universally accepted conclusion that a substance is or is not a controlled substance analogue.  Instead, the jury must hear the evidence, find the facts as it chooses to find them, and decide whether those facts establish that a substance has a substantially similar chemical structure to a controlled substance and has, or was represented to have, a substantially similar pharmacological effect to a controlled substance.  *See* 21 U.S.C. 802(32)(A).  While an expert can say that a drug is cocaine and that cocaine is a controlled substance listed on a schedule approved by Congress, a controlled substance analogue case requires a different and less formulaic analysis.  It is the jury's job to determine whether the evidence establishes facts, which, under the analysis that the statute requires, make a substance a controlled substance analogue.  Opinions about substantial similarity will aid the jury in making this determination; opinion testimony that a substance is or is not a controlled substance analogue will not.

A pretrial and *in limine* conference is scheduled for January 15, 2016 at 2:00 p.m.  All remaining pretrial matters will be determined at this conference.  The Court reminds the parties that its *limine* rulings are provided to help the parties understand the Court's view of permissible evidence to aid in their preparations, but are subject to change as the trial unfolds.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion to Reconsider and/or Clarify Court's Order Dated January 11, 2016 (Doc. 607) is granted in part and denied in part, as set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 14th day of January, 2016, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
