IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**MICHELLE REULET (03),**

    Defendant.

Case No. 14-40005-03-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Michelle Reulet's motions to dismiss certain charges in the Indictment.[1]  Ms. Reulet moves to dismiss counts 1, 2, and 4–16 of the Indictment, and the forfeiture allegation (Doc. 867).  She alleges that the alleged controlled substance analogues that form the basis for these charges are no longer listed as controlled substance analogues, but instead, now are listed as schedule I controlled substances.  Ms. Reulet also moves to dismiss counts 1, 2, and 4–16 of the Indictment as unconstitutionally vague (Doc. 868).  Defendants Craig Broombaugh and Terrie Adams join both motions (Docs. 871, 872).  The government has responded to both motions.  Docs. 888, 891.  For reasons explained below, the court denies both motions.

    **I.**    **Motion to Dismiss Counts 1, 2, and 4–16 and the Forfeiture Allegation**

Ms. Reulet seeks to dismiss Count 1 (conspiracy to possess with intent to distribute and distribute controlled substance analogues), Count 2 (conspiracy to commit mail fraud based on shipments of misbranded drugs), Counts 4–16 (money laundering based on sales and purchases of the alleged analogues), and the forfeiture allegations.

---

[1] The operative indictment is the Second Superseding Indictment.  Doc. 333.  But for simplicity, this Order refers to it as the Indictment.

1

In its Response, the government contends that Ms. Reulet's argument applies only to Count 1, because the allegations in Counts 2, and 4–16 do not depend on a conviction under Count 1. And, it contends, a conviction on Count 1, 2, or 4–16 will support forfeiture. But the court does not need to determine the scope of Ms. Reulet's argument to deny her motion because the court is not persuaded by any of Ms. Reulet's arguments.

Ms. Reulet relies on *United States v. Chambers*, 291 U.S. 217 (1934) to assert that the government can no longer prosecute her under the Controlled Substance Analogue Act (the "Analogue Act") because, since her indictment, Congress has added the analogues that formed the basis of the charges against her to the schedules regulated by the Controlled Substances Act. To put it succinctly, the substances are controlled substances—and not controlled substance analogues. In *Chambers*, the Supreme Court affirmed dismissal of the charges against two defendants who were indicted for violating the National Prohibition Act. *Chambers*, 291 U.S. 221–23. After their indictment, the Twenty First Amendment was ratified, and the National Prohibition Act immediately became inoperative. *Id.* The Supreme Court ruled that in a case where "a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose." *Id.* at 223.

But this case is different than *Chambers*. Congress has not repealed the Analogue Act. It remains in full effect. The only change since Ms. Reulet's indictment is that the alleged analogues that form the basis for the charges against her are now listed as schedule I controlled substances under the Controlled Substances Act. But, from a practical standpoint, this shift changed nothing. Indeed, 21 U.S.C. § 813 states: "A controlled substance analogue shall, to the

extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

Ms. Reulet urges the court to examine whether the "plain import" or "fair implication" of scheduling the alleged analogues extinguishes liabilities under the Analogue Act. Doc. 867 at 9. Ms. Reulet asserts that Congress, by scheduling a substance, knew the substance could no longer be considered a controlled substance analogue. And, Ms. Reulet asserts that the necessary implications from Congress's scheduling actions were that courts should dismiss charges based on those substances as analogues. But the outcome Ms. Reulet advocates would undermine the purpose of the Analogue Act entirely. As the Eighth Circuit explained in *United States v. McKinney*, "because manufacturers of illegal drugs have become adept at tinkering with the molecular structure of controlled substances while retaining the effects that those substances produce, the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances." 79 F.3d 105, 107 (1996) *vacated on other grounds* by *McKinney v. United States*, 117 S.Ct. 1816 (1997). And, "[u]nder that statute, a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance, and either has a substantially similar effect on the user's central nervous system, or a relevant someone represents that it has or intends it to have such an effect." *Id.* at 108. Given the Analogue Act's purpose, little support exists for any argument that the "fair implication" from scheduling a substance that was previously governed by the Analogue Act is that liability for charges under the Analogue Act is extinguished.

When Congress schedules a drug that previously qualified as an analogue, it neither repeals the Analogue Act nor renders it inoperative for those analogue drugs. And, because a controlled substance analogue is treated as a controlled substance, scheduling does not change

3

the practical effect of the charges against Ms. Reulet.  The government still bears the burden to prove that defendants knew they possessed one of two things:  (A) a substance that both was substantially similar in chemical structure to a controlled substance *and* had, or was represented or intended to have, a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to a controlled substance; or (B) a substance that was controlled by the Controlled Substances Act ("CSA") or Analogue Act.  The court thus denies Ms. Reulet's Motion.

## II.     Motion to Dismiss Counts 1, 2, and 4–16 as Unconstitutionally Vague

Ms. Reulet also moves to dismiss Counts 1, 2, and 4–16 as unconstitutionally vague. This is her second attempt to dismiss her charges under the vagueness doctrine.  The court denied defendants' "as applied" vagueness challenge two years ago because defendants did not demonstrate that the Analogue Act is unconstitutionally vague as applied to the specific alleged analogues at issue in the case.  Doc. 281 at 4.  But, Ms. Reulet asserts that the law has evolved since the court's decision.

Ms. Reulet advances three principal arguments, and her co-defendants join these theories. First, she asserts that the Analogue Act is ambiguous in its application of 21 U.S.C. § 802(32)(A)'s provisions.  Second, she contends that the Act lacks scheduling procedures, depriving the ordinary person of fair notice of what substances are prohibited.  And third, she asserts that the phrase "substantially similar" does not establish an ascertainable standard of guilt, thus inviting arbitrary and discriminatory enforcement.

The government asserts that Ms. Reulet's arguments apply only to Count 1.  But, again, the court does not need to determine the scope of Ms. Reulet's arguments to decide her motion.

A. Legal Standard

The void-for-vagueness doctrine requires that a criminal statute define the offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement. *United States v. Gaudreau*, 860 F.2d 357, 359 (10th Cir. 1988).

B. Analysis

1. 21 U.S.C. § 802(32)(A)

Ms. Reulet's first argument rests on the statutory definition of a controlled substance analogue in the Analogue Act. Title 21 U.S.C. §802(32)(A) defines the term "controlled substance analogue" as a substance "the chemical structure of which is substantially similar to the chemical structure of" a schedule I or II controlled substance. Ms. Reulet asserts that the phrase "substantially similar" is unconstitutionally vague, and she asserts that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and the Tenth Circuit's decision in *United States v. Makkar*, 810 F.3d 1139 (10th Cir. 2015) invite the vagueness challenge she presents here.

In *Johnson*, the Supreme Court struck down an increased sentence under the residual clause of the Armed Career Criminal Act ("ACCA") because it was unconstitutionally vague. The ACCA imposes an increased punishment on a defendant with three prior convictions for a "violent felony." *Id.* at 2554. The ACCA defined "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." *Id.* The Supreme Court held that the residual clause of the ACCA was unconstitutionally vague for two reasons. First, because the residual clause left open "grave uncertainty about how to estimate the

risk posed by a crime" by tying "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, because the residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.

Ms. Reulet's argument also relies on dictum from a Tenth Circuit decision issued four months later in *United States v. Makkar*. In that case, our Circuit identified some similarities between the ACCA's residual clause struck down in *Johnson* and the Analogue Act:

> The resemblance between the Analogue Act and the residual clause of the ACCA might raise some questions in your mind. After all, the Supreme Court in *Johnson v. United States*, 135 S.Ct. 2551 (2015), recently declared the ACCA's residual clause too vague to permit its constitutional application. But so far at least the Court hasn't reached a similar judgment about the Analogue Act . . . It's an open question, after all, what exactly it means for chemicals to have a "substantially similar" chemical structure—or effect. And whether terms like those will admit of fair application and afford citizens fair notice, or whether we will find ourselves wading incrementally, in one as-applied challenge after another, deeper into an analytical swamp much as we did with the ACCA's residual clause litigation.

*Makkar*, 810 F.3d at 1143.

Ms. Reulet's argument relies on the Tenth Circuit's analogy between the ACCA's residual clause and the Controlled Substance Analogue Act. Ms. Reulet asserts that the Analogue Act is, perhaps, worse than the ACCA's residual clause because it invites enforcement based on guesswork and intuition. Even chemistry experts, she argues, do not agree on a definition of "substantially similar" for chemical structures.

Several Circuits have reached this issue. And all that have considered the argument have rejected this argument.

> In *United States v. McKinney*, the defendant argued that the Analogue Act "is unconstitutionally vague because there is a lack of scientific consensus" that the alleged analogue and the controlled substance are substantially similar. 79 F.3d 105, 108 (8th Cir. 1996), *vacated on other grounds*, 520 U.S. 1226 (1997). The Eighth Circuit disagreed, holding "a reasonable layperson could, for example, have

6

examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structures of two substances were substantially similar." *Id.*; *see also United States v. Hofstatter*, 8 F.3d 316, 321-22 (6th Cir. 1993) (holding Analogue Act was "sufficiently precise to enable an ordinary person in the position of [the defendant]" to know that this analogue was substantially similar to controlled substance); *United States v. Turcotte*, 405 F.3d 515, 532-33 (7th Cir. 2005) (evidence sufficient to put an "ordinary person" on notice that charged substance is controlled substance analogue); *Klecker*, 348 F.3d at 72 (4th Cir. 2003) ("Although there are important differences between Foxy and DET, the similarities in their structures would put a reasonable person on notice that Foxy might be regarded as a DET analogue . . . ."); *United States v. Fisher*, 289 F.3d 1329, 1339 (11th Cir. 2002) ("People of ordinary intelligence would easily be able to determine that" the alleged analogue "would meet the definition of a controlled substance analogue.").

Also, in *Johnson*, the Supreme Court specifically distinguished between the type of ambiguity in 21 U.S.C. § 802(32)(A) and the "serious potential risk" standard used by the ACCA's residual clause. The residual clause of the ACCA required a court to assess whether a crime qualified as a violent felony "'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *Johnson*, 135 S. Ct. at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). The Court noted that "[i]t is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.*

The crimes charged in this case do not require the factfinder to apply an imprecise standard to an abstraction. Rather, the jury will apply the Analogue Act's statutory factors to the "real-world" facts of the evidence presented in this case. Ms. Reulet's argument that the Analogue Act is unconstitutionally vague is not a sound one.

### 2. Lack of Fair Notice

Ms. Reulet's second argument focuses on whether the Analogue Act provides sufficient notice for an ordinary person to determine if a particular substance is a controlled substance analogue. Ms. Reulet also asserts that, unlike controlled substances, controlled substance

7

analogues are not listed publically, so ordinary persons have no way to learn whether a particular substance is a controlled substance analogue. This argument is unpersuasive. As the Eight Circuit explained in *McKinney*, "the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances," because "manufacturers of illegal drugs have become adept at tinkering with the molecular structure of controlled substances while retaining the effects that those substances produce." 79 F.3d 105, 107 (1996). And, as a district court noted, a "requirement that the Government identify and label each analogue individually before a prosecution could be pursued would essentially eviscerate the analogue statute, and such an argument has been repeatedly rejected by federal courts, including the Eighth Circuit." *United States v. Hawkins*, No. 2:13-cr-04049-BCW-2, 2016 WL 1390005 (W.D.Mo., Apr. 7, 2016). The court also rejects this argument here.

### 3. Risk of Arbitrary and Discriminatory Enforcement

Ms. Reulet's final argument focuses on whether the "substantially similar" language provides sufficient minimal standards to guide law enforcement officers. Ms. Reulet asserts that the statute is impermissibly vague because it fails to restrain official discretion adequately and thus encourages "arbitrary and discriminatory enforcement." Doc. 868 at 16 (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)).

This argument relies on *Kolender v. Lawson*, 461 U.S. 352, 362 (1983). In *Kolender*, the Supreme Court nullified as unconstitutionally vague a statute that required a *Terry* stop suspect provide "credible and reliable" identification. *Kolender*, 461 U.S. at 362. Specifically, the court found that the "credible and reliable" identification requirement "necessarily entrust[s] lawmaking to the moment-to-moment judgment of the policeman on his beat." *Id.* at 360 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)). According to the Court, this furnished a

"convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials.'" *Id.* (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 847–48 (1972)).  And Ms. Reulet asserts that the term "substantially similar" invites the same kind of arbitrary and discriminatory enforcement under the Analogue Act that the Court condemned in *Kolender*.  According to Ms. Reulet, without a DEA protocol prescribing the process, method, or criterion that its specialists use to determine whether a substance is a controlled substance analogue, or a list of substances deemed by the DEA to be controlled substance analogues, determining whether a substance is a controlled substance analogue is left to "the whim of any DEA agent."  Doc. 868 at 18.

Ms. Reulet's third argument imitates her second one.  This time, Ms. Reulet asserts that without a published list of criteria for determining whether a substance is a controlled substance analogue, or a list of analogues themselves, no ordinary person or law enforcement officer can determine whether a substance is "substantially similar" to a scheduled I or II controlled substance.  But again, a published list of controlled substance analogues would undermine the very purpose of the Analogue Act, which was "aimed at prohibiting [distribution of] innovative drugs before they are specifically listed in the schedules as controlled substances."  *McKinney*, 79 F.3d 107.  And, as the Eighth Circuit found in *McKinney*, "a reasonable layperson could . . . have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar."  *Id.* at 108.  The court is not persuaded that the same "convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials'" at issue in *Kolender* is at issue in this case.

Ms. Reulet also asserts that the government is taking a novel interpretation of the Analogue Act by using more than one controlled substance as a "substantially similar"

9

comparator for each prong of the Analogue Act.  But, the court does not find any basis for Ms. Reulet's argument.  The case Ms. Reulet relies on for her argument discusses the three pronged controlled substance analogue definition found in 21 U.S.C. § 802(32)(A).  *See United States v. Forbes*, 806 F. Supp. 232, 235 (D. Colo. 1992).  And, while the case held that § 802(32)(A) should be read as a two-pronged definition (with prongs two and three modified by prong one), the court does not read the Colorado case to suggest that the government may use only one substance as a comparator for all three prongs.  The court thus rejects this argument as a reason to find that the Analogue Act is unconstitutionally vague.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss Counts 1, 2, and 4–16 of the Indictment and the Forfeiture Allegation (Doc. 867) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Dismiss Counts 1, 2, and 4–16 of the Indictment as Unconstitutionally Vague (Doc. 868) is denied.

**IT IS SO ORDERED.**

**Dated this 21st day of December, 2016, at Topeka, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**